WILLIAMS, Senior Circuit Judge,
concurring.
I agree entirely with the court’s opinion and write only to note a paradox in the relationship beiween two key provisions of § 112 of the Clean Air Act.
Section 112(d)(2) calls for emissions standards that are the most stringent that the EPA finds to be “achievable,” taking into account a variety of factors including cost. 42 U.S.C. § 7412(d)(2); see Per Cu-riam at 3. Section 112(d)(3) provides that the standards “shall not be less stringent” than the emission controls that have been “achieved in practice.” 42 U.S.C. § 7412(d)(3); see Per Curiam at 4. The “achievable” standards have come to be known as the “beyond-the-floor” standards, see id. at 4, 5, meaning, obviously, ones more stringent than the “floors” established under § 112(d)(3). The language thus embodies an assumption that standards based on achievability will be more stringent than ones based merely on past achievement.
What if meeting the “floors” is extremely or even prohibitively costly for particular plants because of conditions specific to those plants (e.g., adoption of the necessary technology requires very costly retrofitting, or the required technology cannot, given local inputs whose use is essential, achieve the “floor”)? For these plants, it would seem that what has been “achieved” under § 112(d)(3) would not be “achievable” under § 112(d)(2) in light of the latter’s mandate to EPA to consider cost. (Notice that here EPA issued no “beyond-the-floor” standards, and petitioner makes no complaint on that score.) In other words, as applied to some sources, the *885 floor compelled by the statutory language appears to be more stringent than “beyond-the-floor.”
If this were all, we might be talking of a statute whose literal words produced a result so “demonstrably at odds with the intentions of its drafters” as to justify judicial surgery. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)) (internal quotation marks omitted).
Happily § 112 is not such a statute. Section 112(d)(1) authorizes the Administrator to “distinguish among classes, types and sizes of sources within a category or subcategory,” and the language of subsections 112(d)(2) and (3) pervasively refers to standards for sources in each “category or subcategory.” The authority to generate subcategories is obviously not unqualified; at the least it must be limited by the usual ideas of reasonableness. And there is not necessarily any guarantee that, even with suitable subcategorization, every source will be able to achieve standards that meet a lawful application of § 112(d)(3) to reasonably defined subcategories. Nonetheless, one legitimate basis for creating additional subcategories must be the interest in keeping the relation between “achieved” and “achievable” in accord with common sense and the reasonable meaning of the statute.